Filed 9/29/14  Lockyer v. County of Nevada CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| PETER LOCKYER et al., | C075249 |
| Plaintiffs and Appellants, | (Super. Ct. No. CU12078231) |
| v. | |
| COUNTY OF NEVADA, | |
| Defendant and Respondent; | |
| NEVADA IRRIGATION DISTRICT et al., | |
| Real Parties in Interest and Respondents. | |

In this appeal from a judgment denying a petition for a writ of administrative mandamus, plaintiffs Peter Lockyer and Juliet Erickson (jointly Lockyer) contend defendant County of Nevada prejudicially abused its discretion in failing to apply a

1

provision of the Nevada County Zoning Ordinance governing visually important ridgelines to an application for a permit to build a cellular phone tower. We find no abuse of discretion because under the proper construction and application of the zoning ordinance, the ridgelines provision did not apply. Accordingly, we affirm.

LEGAL BACKGROUND

Because the resolution of this case turns on the proper construction and application of chapter II of the Nevada County Land Use and Development Code, which is also known as the Nevada County Zoning Ordinance (§ L-II 1.1),[1] we begin by setting forth the pertinent provisions of the ordinance. In particular, two provisions of the zoning ordinance are at issue here: section L-II 3.8 (communication towers and facilities) and section L-II 4.3.16 (visually important ridgelines and viewsheds). For ease of reference, we will refer to section L-II 3.8 as the communication tower section and to section L-II 4.3.16 as the visually important ridgelines section.

The visually important ridgelines section appears in the zoning ordinance in article 4 (comprehensive site development standards). The purpose of article 4 "is to provide regulations to guide the design, location, and development of new land uses and the alteration of existing uses." (§ L-II 4.1.1.) Article 4 consists of three separate divisions: division 4.1 (site development standards), division 4.2 (community design standards), and division 4.3 (resource standards). The visually important ridgelines section appears in division 4.3 and thus sets forth certain resource standards. "Resource standards shall apply to all Development Permits, Use Permits, and subdivisions." (§ L-II 4.3.2.) One of the resource standards in the visually important ridgelines section provides as follows: "In no case shall the roofline or any portion of a structure extend above a visually important ridgeline." (§ L-II 4.3.16(C)(1).)

---

[1] We will refer to chapter II simply as the zoning ordinance.

2

The communication tower section appears in the zoning ordinance in article 3 (specific land uses). The purpose of article 3 "is to provide for special standards for specific land uses that may affect adjacent properties, the neighborhood, or the environment, even if other standards of [the zoning ordinance] are met." (§ L-II 3.1.) Article 3 "establishes standards for the design, location, and operation of specific land uses to avoid their creating problems and hazards and to ensure their consistency with the General Plan." (*Ibid.*) Article 3 contains a specific section governing its applicability, which provides in pertinent part as follows: "The specific land uses listed in the Article shall meet the minimum standards of this Article and all other standards of [the zoning ordinance]. If the standards of this Article conflict with another standard of [the zoning ordinance], this Article shall control." (§ L-II 3.2.)

The communication tower section contains a number of locational standards for new towers (§ L-II 3.8(E)), as well as design standards (§ L-II 3.8(F)). The purpose of the locational standards for new communication towers is "to minimize their visibility and the number of distinct facilities present." (§ L-II 3.8(E)(1).) Among those locational standards is the following: "No new tower shall be placed on an exposed ridgeline or to silhouette against the sky unless the site is developed with existing communication facilities." (§ L-II 3.8(E)(1)(a).)

Under the communication tower section, "[a]ll new communication towers . . . shall be subject to a Use Permit pursuant to Section 5.6 of [the zoning ordinance]." (§ L-II 3.8(C)(2).) Under section 5.6, "[a]ny Use Permit issued pursuant to this Article shall conform to the definitions and requirements of [the zoning ordinance]." (§ L-II 5.6(B).)

FACTUAL AND PROCEDURAL BACKGROUND

With the foregoing provisions in mind, we turn to the factual and procedural background of the current dispute. For the purposes of our decision, the facts may be briefly stated. Suffice it to say that in October 2011, the Nevada County zoning administrator conditionally approved an application to build "a 48-foot-tall monopine

3

cellular transmission tower" on certain property in the county. Lockyer appealed that decision to the board of supervisors, and in December 2011 the board denied their appeal and approved the permit.

In January 2012, Lockyer commenced this proceeding by filing a petition for a writ of mandate. In May 2012, the applicant sought to amend the permit to alter the location of the cell tower. In July 2012, the zoning administrator conditionally approved the amended permit application. In doing so, the administrator determined that the amended permit conformed to applicable development standards in the communication tower section and was not required to conform to the standards in the visually important ridgelines section.

Lockyer appealed again, and in October 2012 the board of supervisors again denied their appeal and approved the amended permit. In doing so, the board found that "[t]he proposed use and any facilities, as conditioned, will meet all applicable provisions of the Land Use and Development Code or a same practical effect of those provisions [*sic*], including [the communication tower section], which establishes location and design criteria for communication facilities."

In February 2013, Lockyer filed an amended petition in the writ proceeding. In the amended petition, Lockyer argued (among other things) that the county violated the visually important ridgelines section of the zoning ordinance because the proposed tower would extend above a visually important ridgeline.

The trial court issued its ruling on Lockyer's petition in October 2013. Although the trial court agreed with Lockyer that "more specific requirements" in the communication tower section did not "supplant" those in the visually important ridgelines section, the court also concluded that there was substantial evidence in the

4

record that the tower would not extend above the ridgeline at issue.[2] The court also rejected the remainder of Lockyer's argument, including the argument that the proposed tower would violate the communication tower section because it would " 'silhouette against the sky.' " Accordingly, the trial court denied Lockyer's petition.

From the resulting judgment in October 2013, Lockyer timely appealed.

DISCUSSION

On appeal, Lockyer contends the trial court was *correct* in concluding that the visually important ridgelines section of the zoning ordinance applied to the cell tower at issue here.[3] In Lockyer's view, however, the trial court committed reversible error by "ma[king] its own finding from the record that the tower as proposed" did not violate the standards in the visually important ridgelines section because the tower "did not extend above the [ridgeline]." According to Lockyer, "the trial court should have allowed the County to interpret and apply [the visually important ridgelines section] to the facts of this case in the first instance, and should not have tried to do the County's job for it."

Lockyer's argument misapprehends the standard of review he expressly acknowledges earlier in his brief. As Lockyer admits, on appeal from a judgment denying a petition for a writ of administrative mandate under Code of Civil Procedure section 1094.5, "our role is identical to that of the trial court." (*McAllister v. California Coastal Com.* (2008) 169 Cal.App.4th 912, 922.) Thus, we do not review the trial court's decision for error committed by that court; rather, we review the agency's decision -- just

---

[2] In reaching this conclusion, the trial court did not resolve the issue of whether "the County could have or should have determined, or implicitly did determine, the ridgeline [at issue] to be visually important."

[3] As we have suggested already, the trial court did not actually reach this conclusion because the court did not determine whether the ridgeline at issue was a visually important ridgeline or even determine whether the county had made that determination. As we will explain, however, what the trial court concluded is immaterial to our review.

like the trial court did -- to determine whether the agency "proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion." (Code Civ. Proc., § 1094.5, subd. (b).) For this reason, Lockyer's complaints about what the trial court did are misplaced.

Our conclusion in this regard is supported by *Sierra Club v. California Coastal Com.* (1993) 12 Cal.App.4th 602. There, the appellants complained that the trial court had "misapplied the standard [of review], improperly reweighing the evidence." (*Id.* at p. 610.) The appellate court observed that "the whole argument is academic in the procedural posture of this case. Our review standard on appeal is identical to the trial court's. [Citation.] Therefore, if substantial evidence supports the Commission's action, we reverse; if not, we affirm. Possible misapplication of the review standard below has no bearing on the outcome here." (*Id.* at pp. 610-611.)

By the same reasoning, Lockyer's argument that the trial court committed reversible error by "ma[king] its own finding from the record" is of no moment in this case. If we conclude that the agency prejudicially abused its discretion, we will reverse; if not, we will affirm.

Lockyer's only assertion of a prejudicial abuse of discretion by the county is that the county "failed to follow its own law" by failing to apply the visually important ridgelines section of the zoning ordinance to the cell tower at issue here.[4] As we have

---

[4]     To the extent Lockyer asserts that "the trial court's analysis of the [visually important ridgelines section] should stand undisturbed on this appeal" because "[t]he County . . . filed no cross-appeal from the portion of the judgment finding that the [provision] applied to cell towers," this assertion again ignores the principles we have already discussed. On Lockyer's appeal from the trial court's judgment denying his writ petition, it is *Lockyer's* burden to show that the county prejudicially abused its discretion. (See *Gong v. City of Fremont* (1967) 250 Cal.App.2d 568, 574 ["the burden of proof falls upon the party attacking the administrative decision to demonstrate wherein the proceedings were unfair, in excess of jurisdiction, or showed 'prejudicial abuse of discretion' "].)

noted, one of the standards in the visually important ridgelines section dictates that "[i]n no case shall . . . any portion of a structure extend above a visually important ridgeline." (§ L-II 4.3.16(C)(1).) Lockyer asserts that a cell tower is a "structure" for purposes of this section and that the county itself conceded in a staff report "that the tower as proposed extends above the ridgeline," which is a "violation of the [visually important ridgelines section]." Under Lockyer's reasoning, if the county had applied the visually important ridgelines section of the zoning ordinance to the cell tower at issue here, the county would have had to deny a use permit for the tower because the tower violates that section by extending above the ridgeline. Thus, in Lockyer's view, the county prejudicially abused its discretion by failing to apply that section.[5]

We find no abuse of discretion in the county's failure to apply the visually important ridgelines section to the cell tower at issue here. It is true that a new cell tower is subject to a use permit under section 5.6 of the zoning ordinance. (§ L-II 3.8(C)(2).) It is also true that: (1) a use permit generally must conform to the requirements of the zoning ordinance (§ L-II 5.6(B)); and (2) resource standards like those in the visually important ridgelines section generally apply to use permits (§ L-II 4.3.2). Finally, it is true that all of the specific land uses listed in article 3 -- including cell towers covered by the communication tower section -- generally must meet both the minimum standards of article 3 and all other standards of the zoning ordinance. (§ L-II 3.2.) Thus, at first glance at least, it appears cell towers must meet the standards in the visually important

---

[5]    It is important to note that Lockyer does *not* challenge before this court the county's determination that the proposed tower was consistent with the communication tower provision.

7

ridgelines section of the zoning ordinance. There is, however, a more specific provision in the zoning ordinance than any of the foregoing provisions that precludes the application of the standards in the visually important ridgelines section to cell towers, and that provision is the second sentence of the applicability section in article 3, which provides that "[i]f the standards of this Article conflict with another standard of [the zoning ordinance], *this Article shall control.*" (§ L-II 3.2, italics added.) Under this provision, if there is a conflict between the standards in the communication tower section, which is part of article 3, and the standards in the visually important ridgelines section, which is not, then the standards in the communication tower section control. This is fatal to Lockyer's argument.

At oral argument, the county explained that it never applies the standards in the visually important ridgelines section to cell towers because the county views the standards in that section as conflicting with the standards in the communication tower section. In the county's view, the standards conflict because the standards in the communication tower section "allow things" that the standards in the visually important ridgelines section do not, and therefore the former standards control over the latter.

A county's interpretation of its own ordinances is entitled to considerable deference (*Gray v. County of Madera* (2008) 167 Cal.App.4th 1099, 1129-1130), unless that interpretation is clearly erroneous or unreasonable (see *Aguilar v. Association for Retarded Citizens* (1991) 234 Cal.App.3d 21, 28). Here, there is nothing unreasonable or clearly erroneous about the county's position. The standard in the visually important ridgelines section provides that "[i]n no case shall . . . any portion of a structure extend above a visually important ridgeline." The standard in the communication tower section provides that "[n]o new tower shall be placed on an exposed ridgeline or to silhouette against the sky unless the site is developed with existing communication facilities." Consistent with the county's position, these two standards can be reasonably understood as conflicting. For example, a particular cell tower could satisfy the standard in the

8

communication tower section because the site on which the tower is to be placed is already developed with existing communication facilities, but at the same time that tower could violate the standard in the visually important ridgelines section because the tower will extend above a visually important ridgeline. The possibility of such contrary results justifies the county's conclusion that the standards conflict and that the communication tower section therefore controls over the visually important ridgelines section whenever (as here) the placement of a cell tower is at issue.

Indeed, Lockyer's own arguments in this case illustrate the conflict between the two sets of standards. The county approved the permit for the proposed cell tower at issue here under the standards in the communication tower section, and Lockyer has not challenged that aspect of the county's decision. Thus, we must accept as a foregone conclusion the fact that the proposed tower is consistent with the standards of that section. If Lockyer is correct in asserting that the standards in the visually important ridgelines section would have compelled denial of the permit if the county had applied those standards, that conclusion only serves to prove that under the second sentence of section L-II 3.2, the standards in the visually important ridgelines section *could not be applied* here because those standards conflict with the standards in the communication tower section, which allowed approval of the permit. This is simply true as a matter of logic and reason. Because the standards of the two sections can lead to different results, they necessarily conflict with each other, and thus the county followed its zoning ordinance to the letter by applying only the standards in the communication tower section and *not* the standards in the visually important ridgelines section. For this reason, Lockyer has failed to show any abuse of discretion, and the trial court did not err in denying Lockyer's writ petition.**6**

---

**6** As they are immaterial to our decision, we deny the county's request that we take judicial notice of certain documents from a related case in federal court.

DISPOSITION

The judgment is affirmed.  Defendants and real parties in interest shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)


                                                  ROBIE          , J.



We concur:



      RAYE          , P.J.



      HOCH          , J.